**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

LINDA CAVERLY,           CASE NO. 16-cv-10707

    *Plaintiff*,           DISTRICT JUDGE THOMAS LUDINGTON
          MAGISTRATE JUDGE PATRICIA MORRIS

*v*.

FANNIE MAE,
EVERBANK MORTGAGE COMPANY,
and TROTT LAW, P.C.,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON EVERBANK'S MOTION TO DISMISS (Doc. 26), AND TROTT'S MOTION
FOR SETTLEMENT OF ORDER OF DISMISSAL (Doc. 28)**

**I. RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant EverBank Mortgage Company's ("EverBank") Motion to Dismiss, (Doc. 26), be **GRANTED**, that Plaintiff's Amended Complaint, (Doc. 13), be **DISMISSED WITH PREJUDICE**, and that Defendant Trott Law, P.C.'s ("Trott") Motion To Order Dismissal, (Doc. 28), be **DENIED AS MOOT or alternatively, granted.**

**II. REPORT**

    **A. Introduction**

On January 21, 2016, Plaintiff Linda Caverly ("Plaintiff") filed suit against Defendants Federal National Mortgage Association ("Fannie Mae"), EverBank, and Trott challenging a foreclosure by advertisement carried out by Defendants on her house at 639

1

Cedar Dr., Indian River, MI 49749 ("the Property"), and leveling alternative claims seeking various forms of relief for claimed foreclosure defects. *See generally* (Doc. 1, Ex. A). Fannie Mae filed a notice of removal on February 26, 2016, (Doc. 1), and on March 14, 2016, an order reassigning this case from District Judge O'Meara and Magistrate Judge Whalen to District Judge Ludington was issued. (Doc. 8). Thereafter, District Judge Ludington referred all pretrial matters to the undersigned Magistrate Judge. (Doc. 11).

On March 28, 2016, Plaintiff filed an Amended Complaint, (Doc. 13), alongside a Motion to Remand to State Court, (Doc. 14). I issued a Report and Recommendation on June 10, 2016 urging the Court to deny Plaintiff's Motion and reasoning that Plaintiff could not state a viable claim against Trott under the Michigan Collection Practices Act, M.C.L. § 445.903. (Doc. 21). This was adopted on July 28, 2016. (Doc. 22). Fannie Mae later filed an Answer to Plaintiff's Amended Complaint on August 11, 2016, (Doc. 25), and the same day, EverBank filed a Motion To Dismiss Plaintiff's Amended Complaint. (Doc. 26). On August 12, 2016, I issued an order requiring a response to EverBank's Motion by September 1, 2016, (Doc. 27)—as yet, Plaintiff has not filed this response. Trott also filed a Motion requesting an order of dismissal pursuant to Local Federal Rule of Civil Procedure 55.2(d). (Doc. 28).

**B. Background**

Plaintiff alleges that she "and her now-deceased husband, Danny Caverly" owned the subject property at all relevant times. (Doc. 13 at ID 119). Mr. Caverly passed away on August 24, 2009, and Plaintiff contends that as a result she "became the sole fee title holder" to the property. (Doc. 13 at ID 120). Thereafter, on August 5, 2013, "the mortgage

2

interest . . . was assigned to Defendant EverBank and recorded . . . ." (*Id.*). Plaintiff also contends that "Defendant Fannie Mae was the holder of the underlying obligation with respect to the mortgage interest with Defendant EverBank []as the servicer of the debt on behalf of Defendant Fannie Mae." (*Id.*). Her amended complaint concedes that she believes she "was not liable on the underlying promissory note," which implies that she was not a signatory. (Doc. 13 at ID 119).

Plaintiff acknowledges that over the course of the intervening years, she "experience[d] occasional financial difficulty and on occasion was delinquent in mortgage payments regarding" the property, and that she fell behind in payments "in the fall/winter of 2014/2015." (Doc. 13 at ID 120-21). Thereafter, Plaintiff alleges that EverBank "hire[d] Defendant Trott to commence and handle various matter[s] regarding a mortgage foreclosure by advertisement pursuant to Michigan law." (Doc. 13 at ID 121). "[O]n various occasions during both the foreclosure and pre-foreclosure process, Defendants EverBank and Trott provided notice to the 'Estate of Danny Caverly.'" (*Id.*). And on April 28, 2015, when "the delinquency on the underlying mortgage was approximately $32,000.00," EverBank commenced to foreclose the mortgage by advertisement under M.C.L. § 600.3201 *et seq.*, scheduling the foreclosure sale for May 29, 2015. (Doc. 13 at 121, 123).

Plaintiff suggests that "despite . . . being a Borrower under the mortgage, at no time whatsoever did Defendants EverBank or Trott provide any notices, correspondence or documents to the attention of Plaintiff." (Doc. 13 at 122). More specifically, Defendants allegedly never provided "the applicable notice of default, notice accelerating the balance

3

owing under the mortgage and/or the required notice of exercise of the power of sale or any notice of any kind whatsoever," as "required under the mortgage." (Doc. 13 at 123). Plaintiff's amended complaint concedes that "on or about May 15, 2015, Defendant Trott did forward to 'Lisa Caverly' a letter offering various mortgage reinstatement options. . . . [though she] is not currently certain as to when she in fact received the correspondence." (Doc. 13 at ID 123).

Plaintiff contends that on May 29, 2015, at 8:30 A.M., she "did contact Defendant Trott to pay . . . the sum necessary to reinstate the mortgage," but "Trott refused to accept the funds claiming that it could not do so as the sale was scheduled for 11:00 a.m. that morning and . . . could not be adjourned." (Doc. 13 at 124). She further alleges that she spoke "with clerical members of the company" and that their statements "were not true as . . . Trott had in fact confirmed in writing that the mortgage could be reinstated after May 28, 2015, and further, mortgage foreclosure sales can in fact be adjourned." (Doc. 13 at ID 124). The balance "then due and owing was $385,683.77" (Doc. 13 at ID 123).

At the sale, Plaintiff alleges that "Fannie Mae did bid the sum of $340,000.00 and on June 8, 2015, a sheriff's deed was record[ed] in the Cheboygan County Register of Deeds Office . . . conveying the property to Defendant Fannie Mae, subject to Plaintiff['s] statutory right of redemption." (Doc. 13 at 124-25). This statutory right of redemption expired on November 29, 2015. (Doc. 13 at 125). Pursuant to the sheriff's deed, "the amount required to redeem the sale [became] $340,000.00, plus additional costs pursuant to statute, rather than the approximate $32,000.00 mortgage delinquency." (*Id.*).

4

In sum, Plaintiff argues that "the mortgage foreclosure sale is void and/or voidable as a result of fraud and/or the irregularity in the foreclosure process." (Doc. 13 at 125-26).

### C.  Motion To Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429,

6

431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, 6 and added nothing new" did not convert motion to dismiss into motion for summary judgment).

### D. Analysis

Plaintiff's Amended Complaint contains eight counts: Count I seeks declaratory relief; Count II seeks quiet title; Count III alleges negligence against EverBank and Trott; Count IV alleges tortious interference with a contractual relationship against EverBank and Trott; Count V alleges misrepresentation against EverBank and Trott; Count VI alleges innocent misrepresentation against EverBank and Trott; Count VII alleges negligent misrepresentation against EverBank and Trott; and Count VIII alleges violations of the Michigan Consumers Protection Act ("MCPA") against EverBank and Trott. I address each count below, in turn.

#### 1. Plaintiff Is Not Entitled to Declaratory Relief or Quiet Title

Plaintiff asks the Court to "[d]eclare and determine the rights of the parties in The Property" because "the mortgage foreclosure sale and the subsequently issued sheriff's deed is void and/or voidable as a result of fraud and/or the irregularity in the foreclosure process; Defendant Fannie Mae has no interest in The Property." (Doc. 13 at ID 128). She also requests the Court to find that she "is the fee title owner of The Property," that "the May 29, 2015, mortgage foreclosure sale is void," and that "the May 29, 2015, Sheriff's Deed is null and void." (Doc. 13 at ID 130).

7

Foreclosures by advertisement are governed by statute under Michigan law, which provides that "[u]nless the premises described in [a sheriff's] deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, . . ." M.C.L. § 600.3236; *see Conlin v. Mortg. Electronic Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013). This rule reflects an interest in finality, and to protect this interest, "the ability for a court to set aside a sheriff's sale has been drastically circumscribed" as to mortgagors who do not avail themselves of the right of redemption before its expiration. *Conlin*, 714 F.3d at 359; *cf. Awad v. Gen. Motors Acceptance Corp.*, 2012 WL 1415166, at *3 (Mich. Ct. App. Apr. 24, 2012) (citing *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942)). Indeed, mortgagors may only set aside a statutory foreclosure if they present "a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Kubicki v. Mortg. Electronic Registration Sys.*, 292 Mich. App. 287, 289 (Mich. Ct. App. 2011) (quoting *Sweet Air Invs., Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007)). To sufficiently plead fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." If a plaintiff cannot demonstrate the existence of "a case of actual controversy" in this respect, courts cannot offer declaratory relief overturning a foreclosure by advertisement, or quiet title and accomplish the same purpose. *See* M.C.L. § 2.605.

The parties agree that the redemption period expired on November 29, 2015. To set aside the sale, therefore, Plaintiff must first plead fraud or irregularity in the foreclosure process itself. *Accord Facione v. CHL Mortg. Tr. 2006-J1*, 628 F. App'x 919, 921 (6th Cir. 2015). In addition, Plaintiff must plead that the fraud or irregularity prejudiced her such that she "would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance . . ." *Id.* at 921-22 (quoting *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (2012)) (internal quotation marks omitted). If pleading fraud or mistake, the Plaintiff's allegations must encompass details as to the "*time, place, and content* of the alleged misrepresentations on which [the mortgagor] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 498 (6th Cir. 2014) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)); *cf. Block v. BAC Home Loans Servicing, L.P.*, 520 F. App'x 339, 340 (6th Cir. 2013) ("Speculation is not enough to survive Michigan's requirement that plaintiffs plead allegations of fraud or mistake 'with particularity.'" (quoting Mich. Ct. R. 2.112(B)(1))).

Defendants contend that as a non-signatory to the promissory note underlying the mortgage, Plaintiff had no right to receive notice on the status of the loan, for she was not a party to the contractual agreement. *See Austin v. Countrywide Home Loans, Inc.*, No. 07-CV-15127, 2008 WL 3833269, at *5 (E.D. Mich. Aug. 13, 2008) ("Plaintiff . . . is not a borrower under the Note, did not sign the Note and has no interest in the Note. Therefore, plaintiff has no standing to sue under the Note. . . . Plaintiff's rights in the Property, whatever they may be, are not the same thing as having a personal stake in the Note.")

9

(plaintiff was an assignee of the rights in the property); *cf. Garrow v. JPMorgan Chase Bank, N.A.*, 2016 WL 2894066, at \*6 (E.D. Mich. Apr. 27, 2016) (non-party to the note cannot allege how RESPA violation prejudiced her in the foreclosure process). In fact, Plaintiff's dower interest entitled her to notice. *See generally Oades v. Standard Sav. & Loan Ass'n*, 257 Mich. 469 (1932). The court in *Oades* voided a foreclosure by advertisement for failure to name Mrs. Oades, the mortgagor's wife, as a mortgagor in the notice of sale where Mrs. Oades "had no estate in [the property] except her inchoate dower interest." *Id.* at 471.

The facts in this case, however, cannot replicate the *Oades* outcome for two reasons. First, the affidavits attached to Plaintiff's amended complaint—(Doc. 13, Ex. F at 4-7)—constitute presumptive evidence that EverBank complied with the relevant statutory notice requirements, and Plaintiff indeed seems to have known that the sale was on May 29, 2015. *See* M.C.L. § 600.3264; (Doc. 13 at ID 124) (alleging that Plaintiff called Trott the morning of the sale in an attempt to reinstate her mortgage). Unlike the *Oades* plaintiff, these affidavits also show that the posted and published notices *listed Plaintiff* as a mortgagor. *Compare Oades*, 257 Mich. at 471072 ("The notice of foreclosure sale named Oades as mortgagor. It did not name Mrs. Oades as mortgagor."), *with* (Doc. 13, Ex. F at 4-7). Second, the Michigan Supreme Court since "made clear in *Kim* that procedural irregularities . . . do not result in voiding *ab initio* the foreclosure proceedings; rather, the foreclosure proceedings are *voidable*, only upon a showing by the plaintiff of prejudice," and Plaintiff has not alleged sufficient prejudice—namely, that "absent the alleged notice defect, she would have been in a position to pay the entire indebtedness on the loan." *Smith*

10

*v. Delta Funding Corp.*, No. 15-CV-13387, 2016 WL 540715, at *4 (E.D. Mich. Feb. 11, 2016).

The fact that Plaintiff never attempted to redeem the property proves damning to any claim that alleged noncompliance with applicable notice requirements prejudiced Plaintiff's ability to preserve her interests in the property. *Accord Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004) ("Plaintiff let several (six) months pass after the foreclosure sale before filing a complaint. Furthermore, Plaintiff never tendered any money to redeem the property. Therefore, based on the reasoning of the Michigan Court of Appeals in *Jackson Inv. Corp.* [*v. Pittsfield Prods., Inc.*], 162 Mich. App. 750 [(Mich. App. 1987)], even if Plaintiff proved MERS failed to comply with the foreclosure notice statute, there are insufficient grounds upon which this Court could invalidate the foreclosure sale." (internal citations omitted)); *cf. Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *4 (E.D. Mich. Nov. 1, 2011) ("Here, even assuming plaintiff's allegations are true, which [Defendant] disputes and counters with affidavits attesting that the notice was properly posted and plaintiff was told of his right to ask for a modification, these are insufficient to set aside the foreclosure. Moreover, plaintiff cannot show prejudice resulting from either alleged defect where he did not attempt to redeem the property and waited until days before the redemption period expired to challenge the sheriff's sale, and at no time requested a stay of the sale.").

To this argument, Plaintiff alleges she called "Defendant Trott to pay . . . the sum necessary to reinstate the mortgage" at "approximately 8:30 a.m." on "May 29, 2015," that she "believe[d] that she was speaking with clerical members of the company," and that

11

"the statements of Defendant Trott's clerical staff to Plaintiff were not true as defendant Trott had in fact confirmed in writing that the mortgage could be reinstated after May 28, 2015, and further, mortgage foreclosure sales can in fact be adjourned." (Doc. 13 at ID 124). Read alongside her other allegations however—see (Doc. 13 at ID 123-24) ("[O]n or about May 15, 2015, Defendant Trott did forward to 'Lisa Caverly' a letter offering various mortgage reinstatement options."); (Doc. 13 at ID 121) ("[O]n various occasions during both the foreclosure and pre-foreclosure process, Defendants EverBank and Trott provided various notice to the 'Estate of Danny Caverly' and/or 'Danny Caverly.'"); (Doc. 13 at ID 120) ("[A]s a result of the death of Danny Caverly, Linda Caverly became the sole fee title holder of The Property.")—such allegations fail to adequately allege fraud or irregularity sufficient to overturn the sheriff's sale. This is particularly true when coupled with Plaintiff's failure to exercise her redemption rights, and her eight-month delay in filing suit. *Cf. Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 162 Mich. App. 750, 756-57 (Mich. Ct. App. 1987) ("The instant complaint was not filed until five months of the six-month redemption period had passed. While defendant's attorney asserts that he did not become aware of the defect until shortly before the instant complaint was filed, the circuit court found that Jackson had 'the means, skill and knowledge to protect its interest more vigorously.' To cure the defect . . . the circuit court extended the redemption period by forty-three days. At no time during the redemption period has Jackson attempted to redeem the premises.").

Importantly, the evidence attached to Plaintiff's affidavit contradicts her allegations. Trott's May 15, 2015, letter, for instance, merely details a reinstatement amount on the

12

condition that Plaintiff "pay by 5/28/2015" and cautions that such estimation "expires on 5/28/2015." (Doc. 13, Ex. E). Nor does it say she could seek reinstatement after a *sale* occurs; it tells her that she must contact them, presumably *before* a sheriff's sale of the property, if she "want[s] to reinstate [her] loan after 5/28/2015." (*Id.*); *cf. Doering v. JPMorgan Chase Bank, N.A.*, 2015, WL 5460702, at *6 (E.D. Mich. Sept. 16, 2015) ("Defendant did not promise to reinstate the loan without conditions; rather, reinstatement was conditioned upon paying the amount due to bring the loan current."). Though Trott's statement may have puzzled Plaintiff, considering the sale was set for May 29, 2015, Plaintiff remained aware of this fact as well. (Doc. 13 at ID 124). And Trott clearly indicates that "the foreclosure action will continue until full reinstatement funds, acceptable to [EverBank], have been received or until our office receives proper notification from [EverBank] to cancel the foreclosure action." (Doc. 13, Ex. E at 3).

For these reasons, Plaintiff's pleadings would not entitle her to rescission of the foreclosure sale at issue. Because she does not sufficiently allege fraud or irregularity in the foreclosure process, she cannot challenge the results of the foreclosure by advertisement. *E.g.*, *Overton v. Mortg. Electronic Registration Sys.*, No. 284950, 2009 WL 1507342, at *2 (Mich. Ct. App. May 28, 2009) ("Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished.").

In reaching this result, I note that the Sixth Circuit has cautioned courts dismissing this class of suit—following a plaintiff's divestment under M.C.L. § 600.3236 ("Unless the premises described in such deed shall be redeemed within the time limited for such redemption . . . such deed shall thereupon become operative, and shall vest in the grantee

13

therein named, . . . all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter, . . .")—against grounding their decision on jurisdictional standing. *E.g.*, *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429 (6th Cir. 2013) (interpreting such dismissals as reflecting the inability of plaintiffs' fraud or irregularity claims "to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale"); *Cruz v. Capital One, N.A.*, 2016 WL 3522321, at *4 (June 28, 2016) ("The idea that the expiration of the redemption period time divests a Court of the power and authority to adjudicate the claim because the plaintiffs have no standing is foreign to Federal jurisprudence. The standing argument itself is a merits argument, not a jurisdictional argument."). At the same time, however, finding a plaintiff incapable of pleading fraud or irregularity sufficient to set aside a foreclosure sale, as here, would indeed deprive her of a "legal cause of action," as required for standing to challenge a foreclosure by advertisement under Michigan law. *Lansing Sch. Educ. Ass'n v. Lansing Bd. of Educ.*, 487 Mich. 349, 372 (2010).[1]

---

[1] I observe, with some hesitation, that the absence of such injury under state law, in certain circumstances, would seemingly *also* reveal the absence of an "actual" "invasion" of a "concrete and particularized," "legally protected interest" as required for Article III standing in a jurisdictional sense. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The effect of this distinction between 'merits-based' and 'jurisdiction-based' standing as yet remains uncertain. As the Sixth Circuit suggested in *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir 2012), "*Overton*'s holding does not turn on standing doctrine, because such an interpretation appears to be contrary to Michigan Law," a proposition for which it cited *Manufacturers Hanover Mortgage Corporation v. Snell*, 142 Mich. App. 548, 553 (Mich. Ct. App. 1985). However, *Snell* merely recognized that "[t]he [Michigan] Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceedings." 142 Mich. App. at 553. *Snell*'s discussion of this practice occurred in a separate context and only graced its jurisdictional implications, citing case law that far predated the foreclosure by advertisement statute at issue in this and many other cases. *See Reid v. Rylander*, 270 Mich. 263, 267 (1935); *Gage v. Sanborn*, 106 Mich. 269, 279 (1895). In short, if squarely considered anew, the distinction urged by the Sixth Circuit (and to which I defer) may prove superfluous.

14

Whether conceived in jurisdictional or merit-based terms, Plaintiff has not alleged any cognizable legal injury that would entitle her to declaratory relief from the foreclosure by advertisement. In addition, because "[q]uiet title is a remedy and not a separate cause of action," and because Plaintiff "has not adequately plead a cause of action" for fraud or irregularity in foreclosure proceedings—or, for that matter, any other claim discussed below—the Court should likewise not quiet title in her name. *McCarrick v. Wells Fargo Bank, N.A.*, No. 13-CV-11292, 2014 WL 1305055, at *5 (E.D. Mich. Mar. 31, 2014).

### 2. Plaintiff's Misrepresentation Claims Lack Merit

Plaintiff includes three misrepresentation claims in her complaint: Misrepresentation (Count V); Innocent Misrepresentation (Count VI); and Negligent Misrepresentation (Count VII). (Doc. 13 at ID 137-42). Each claim fails because, as mentioned before, reading Plaintiff's allegations alongside Trott's May 15, 2015, note demonstrates that Plaintiff misread the note. As EverBank's brief points out, Trott's letter noted that "the foreclosure action will continue until full reinstatement funds, acceptable to EverHome Mortgage Company, have been received or until our office receives proper notification from EverHome Mortgage Company to cancel the foreclosure action." (Doc. 13, Ex. E at 3). And as already noted, the affidavits of posting and publication attached to Plaintiff's complaint, (Doc. 13, Ex. F), presumptively prove that Plaintiff had notice of the foreclosure sale on May 29, 2015. (Doc. 13, Ex. F). Plaintiff raises one additional allegedly false representation—that Trott's "clerical members" said "that the sale could not be adjourned" when she contacted them the morning of May 29, 2015. (Doc. 13 at ID 124). This representation appears to be neither false (as Trott informed Plaintiff that the

15

foreclosure action would proceed) nor intended to mislead Plaintiff, especially since the offer contained in the May 15, 2015, letter "expire[d] on 5/28/2015." (Doc. 13, Ex. E at 3). For these reasons, Plaintiff's misrepresentation claims should be dismissed.

There exist additional reasons as to why Plaintiff fails to properly plead innocent misrepresentation. Although innocent misrepresentation "eliminate[s] scienter and proof of the intention that the misrepresentation be acted upon," a Plaintiff must nevertheless allege that "the misrepresentation [was] made in connection with the making [of] a contract and the injury suffered . . . inure[d] to the benefit of the misrepresenter." *U.S. Fid. and Guar. Co. v. Black*, 412 Mich. 99, 118 (1981). On the one hand, the pleadings here fail to show that Trott's May 15, 2015, letter was made "in connection with the making [of] a contract," *id.*, because Plaintiff admittedly allowed the reinstatement offer (if it can truly be called an offer) to lapse; no agreement thereto was formed. The pleadings also do not allege that Trott reaped any benefit from its alleged misrepresentation. These additional reasons counsel against a finding in favor of Plaintiff's innocent misrepresentation claim.

Count VIII of Plaintiff's complaint essentially couches her previous allegations as to Defendants' alleged misrepresentations as a violation of the MCPA. In relevant part, the MCPA prohibits "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." § 445.903(1)(bb). The above analysis of Plaintiff's misrepresentation pleadings applies with equal force here: Plaintiff does not plausibly suggest that any misrepresentations occurred.

### 3. Plaintiff's Negligence Claim Lacks Merit

16

The threshold question in a negligence claim such as this is "whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on contract will lie." *Fulz v. Union-Commerce Assoc.*, 470 Mich. 460, 467 (2004). Plaintiff alleges that "Defendant Everbank and Defendant Trott, by and through its clerical staff, had a duty to comply with Michigan law as well as the provisions of the mortgage in the event they seek to pursue a mortgage foreclosure." (Doc. 13 at ID 133). In Michigan, however, courts have declined to impose an independent duty of care on lenders with respect to a contractual mortgagor-mortgagee relationship. *E.g. Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 198-200 (Mich. Ct. App. 1991). Because Plaintiff's "factual allegations do not provide a basis for a separate action in tort, and do nothing but recharacterize the alleged contractual obligations concerning the Loan as 'negligence,'" her negligence claim should be dismissed. *Dolinski v. JPMorgan Chase Bank, Nat. Ass'n*, No. 14-13273, 2015, WL 2343006, at *9 (E.D. Mich. May 14, 2015).

### 4.  Plaintiff's Tortious Interference Claim Lacks Merit

Under Michigan law, a claim of tortious interference in a business relationship or expectancy requires that a Plaintiff plead: "[1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff." *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461, 464 (6th Cir. 2014) (quoting *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 492 Mich. 40, 58 (2012))

(internal quotation marks omitted). With respect to the third element, interference "must involve either 'the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.'" *Id.* (quoting *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 367 (Mich. Ct. App. 2005)). "When a defendant's acts are 'motivated by legitimate business reasons,' it does not act with malice and a lack of justification." *Id.* (quoting *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (Mich. Ct. App. 2003)).

As to EverBank, Plaintiff includes no allegations that would implicate liability; she merely alleges that the "mortgage relationship between Defendant EverBank and Plaintiff constituted a contract, a business relationship and/or expectancy with a third party." (Doc. 13 at ID 136). Because Plaintiff must "demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference," yet cannot adequately plead fraud or irregularity in the foreclosure process, or misrepresentation by any defendant, her tortious interference claim remains devoid of merit. *BPS Clinical Labs. v. Blue Cross and Blue Shield of Mich.*, 217 Mich. App. 687, 699 (Mich. Ct. App. 1996).

### 5. Dismissal with Prejudice Is Appropriate

Dismissal "on the merits" is synonymous "with prejudice." *Mufadhal v. Citimortgage, Inc.*, No. 12-CV-10251, 2012 WL 5989887, at *1 (E.D. Mich. Nov. 30, 2012). Whether a complaint states a claim or not is a merit-based inquiry. *E.g. Kelly v. Wright*, No. 14-cv-13452, 2014 WL 5089481, at *1 n.1 (E.D. Mich. Oct. 9, 2014) ("[A] dismissal for failure to state a claim would be with prejudice."). This outcome is even more appropriate where the plaintiff had an opportunity to amend her complaint. *See Calabrese*

*v. St. Mary's of Mich.*, No. 06-13908-BC, 2007 WL 2128338, at *1 (E.D. Mich. July 25, 2007).

### 6. Trott's Motion To Order Dismissal

Because I recommend dismissing Plaintiff's case with prejudice, there is no need to address Trott's Motion. (Doc. 28.) I therefore recommend terminating it as moot. Alternatively, the motion should be granted since a previous R&R, as adopted, determined that Trott was fraudulently joined and that no viable claim against Trott had been alleged but failed to expressly state that Trott should be dismissed from the case. (Docs 21, 22.).

### E. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Everbank's Motion to Dismiss, (Doc. 26), be **GRANTED**, that Plaintiff's Amended Complaint, (Doc. 13), be **DISMISSED WITH PREJUDICE**, and that Trott's Motion to Order Dismissal, (Doc. 28), be **DENIED AS MOOT OR ALTERNATIVELY GRANTED.**

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are

19

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Date: December 8, 2016                           S/ PATRICIA T. MORRIS
                                                 Patricia T. Morris
                                                 United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: December 8, 2016                           By s/Kristen Castaneda
                                                 Case Manager